## THE PEOPLE *v.* JAMES A. SHOTWELL.

DISCHARGE OF JURY IN CRIMINAL CASE.—If, after the jury in a criminal case have retired to deliberate on their verdict, the Court directs the Sheriff to discharge them if they do not agree on their verdict by a certain hour, and then adjourns, and at the hour named the Sheriff discharges the jury, this will not operate as an acquittal of the defendant, but another trial may be had.

CHARGE OF TWO OFFENSES IN INDICTMENT.—If an indictment for forgery contains two counts, in each of which a copy of the instrument alleged to have been forged is set out, and the copies are alike, it will not be presumed that each is a copy of only one and the same original instrument, without an allegation to that effect in the second count.

WHEN SEVERAL DISTINCT OFFENSES MAY CONSTITUTE A SINGLE CRIME.—A person guilty of forging a check, and also of an attempt to pass it, or of passing it as true and genuine with intent to damage and defraud another person, may be indicted, tried, and convicted for all these connected and consecutive acts as constituting one transaction and one crime; or if guilty of but one of such acts, he may be indicted, tried, and convicted for its commission as constituting a distinct crime.

HOW OBJECTION TO INDICTMENT TO BE TAKEN.—If there is more than one offense charged in the indictment, the defect should be taken advantage of by demurrer. If the objection be not taken by demurrer, it cannot be considered on motion in arrest of judgment.

ELECTION AS TO COUNT ON WHICH ACCUSED SHALL BE TRIED.—If the indictment contains more than one count, each charging a distinct offense, the Court is not required to compel the prosecutor to elect upon which count of the indictment he will try the accused.

SENTENCE WHERE INDICTMENT· CHARGES TWO OFFENSES.—If the indictment contains more than one count, each charging a distinct offense, and the verdict is general, finding the defendant guilty, the presumption will be that the Judge who tried the case pronóunced judgment for the offense to which the evidence was directed and was properly applicable.

APPEAL from the County Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. Vanarman,* for Appellant.

The practice in criminal cases in California is very minutely regulated by statute, leaving very little scope for the operation of the common law in mere matters of practice.

A jury once charged with a criminal case shall not be discharged before verdict except for reasons specified in the statute, (Wood's Digest, Sec. 410, p. 302,) " unless by consent of both parties, entered in the minutes, or unless after such a time as the Court shall deem proper, it satisfactorily appear that there is no reasonable prospect of an agreement."

The reasons specified in said section are, in brief, inability from sickness or other inevitable accident. No such accident is here pretended, and the only question is whether the jury were discharged regularly on account of inability to agree.

"After such time as the Court shall deem proper, it must appear (to the Court) that there is no reasonable probability of an agreement."

The discretion here vested is given to the Court to decide whether there is a probability of agreement, not to the Sheriff or any other officer. It is a judicial discretion as much as any other required to be exercised in the course of the trial, and according to elementary principles, cannot be delegated or executed by proxy.

Suppose the Judge should leave the whole question of how long the jury should be kept together, and when it had become apparent that the jury could not agree, and should direct the Sheriff to keep the jury together until he was satisfied that they could not agree, and then discharge them. Would this

constitute a compliance with the law? The duties of the Sheriff and of the Judge cannot be thus confounded consistently with either law or the safety of the citizen.

The question of discharging or retaining the jury is a judicial question, and cannot be delegated or decided by proxy.

*Hoge & Wilson*, for the People.

It was originally doubted whether at common law, a jury, when once given in charge of a case, could be discharged by the Court without a verdict. But the dictum of Coke to the effect that the Court had no such power, has been long since overruled and held not to be law. And it is now settled, both in England and the United States, that the Courts may, in their discretion, discharge a jury without verdict, when satisfied that the proper administration of justice requires it. The whole doctrine rested upon the principle of the common law, that no man should be twice put in jeopardy of life or limb for the same offense. This principle of the common law has been made the subject of constitutional provision in our organic law as well as in that of the United States. It is at this day well settled, that the discharge of a jury in a criminal case, and putting the prisoner upon a second trial, is not a violation of the constitutional provision, is not a putting in jeopardy a second time, and does not entitle him to a discharge. It was at one time thought that a distinction existed between capital cases and other felonies, but that distinction has not been maintained, and the better authority sustains the power of the Court to discharge the jury for want of agreement, or other proper cause, without regard to the character or magnitude of the offense. As has been well said, to admit it in any case, or for any cause, is to yield the whole principle, and, of necessity, leave it discretionary with the Court when and under what circumstances the power should be exercised.

The Court will find the whole doctrine thoroughly discussed and settled in the following cases: *People* v. *Goodwin*, 18 John. 199, and fol.; *People* v. *Olcott*, 2 Johns. Cases, 301; *People* v. *Green*, 13 Wendell, 55; *United States* v. *Haskell*,

4 Wash. C. C. 408, 410; *United States* v. *Perez*, 9 Wheaton, 579; *Commonwealth* v. *Bowden*, 9 Mass. 494; *Commonwealth* v. *Purchase*, 2 Pick, 521; *Commonwealth* v. *Roby*, 12 Pick. 496; *United States* v. *Shoemaker*, 2 McLean, 114; *Commonwealth* v. *Townsend*, 5 Allen, Mass. 216; *United States* v. *Cooledge*, 2 Gallison, 363; *People* v. *March*, 6 Cal. 546.

By the Court, CURREY, J.

The defendant was indicted for forgery, to which he pleaded not guilty. He was twice tried. At the first trial the jury disagreed and were discharged; on the second trial he was found guilty and sentenced to be imprisoned in the State Prison for the term of six years. The indictment consists of two counts. By the first count the defendant is accused with having on the 26th of January, 1864, at the City and County of San Francisco, in the State of California, feloniously and falsely forged and counterfeited a certain check—a copy of which is set forth in such count—with intent to prejudice and defraud the drawees therein named. The second count of the indictment charges that the defendant, on the same day and year, and at the same place, did feloniously and falsely attempt to pass, and did alter and pass, as true and genuine, a certain forged and counterfeit check—a copy of which is set forth in said second count, and is in the identical words and figures of that described in the first count—with intent, well knowing the same to be forged and counterfeit, then and thereby to prejudice, damage and defraud the drawees therein named.

The defendant relies on three grounds for a reversal of the judgment, as follows:

First—That the jury first impanelled to try the defendant were irregularly and illegally discharged.

Second—That the indictment charges against the defendant the commission of several distinct offenses, and that the Court refused to require the prosecution to elect on which charge to try him, though requested to make such order.

Third—That the verdict of the jury is general, convicting

the defendant of several distinct offenses, while the evidence is confined to one of the charges.

We will examine these points in the order in which they are stated.

I. Upon the first trial the cause was finally submitted to the jury at four o'clock in the afternoon of the day when they retired, and, not having agreed upon a verdict at eleven o'clock in the night of the same day, the Court, in the absence of the defendant, but in the presence of one of his counsel, directed the Sheriff that in case the jury failed to agree by two o'clock of the following morning, then to discharge them. The jury not having agreed at that hour, they were discharged as directed. The defendant's counsel claims that this operated as an acquittal of the defendant. The course pursued in this particular is not to be commended. It was an irregularity, but it does not therefore follow that the effect of it was to acquit the defendant. The four hundred and eleventh section of the Criminal Practice Act reads as follows: "In all cases where a jury are discharged, or prevented from giving a verdict by reason of any accident or other cause, except when the defendant is discharged from the indictment during the progress of the trial, or after the cause is submitted to them, the cause may be again tried at the same or another term."

By subjecting the defendant to the trial at the time he was found guilty, it cannot be said he has been twice put in jeopardy for the same offense in violation of a constitutional right. On this point Courts have been often called upon to interfere for the protection of persons accused of crimes, where upon the first trial the jury has been discharged without having rendered a verdict. In the case of *The People* against *Goodwin*, 18 John. 187, the subject was ably and elaborately considered by Mr. Chief Justice Spencer, and the conclusion to which he arrived was that, where a jury in a criminal case is discharged without having found a verdict, the accused may be tried again by another jury, and that he is not thereby put in jeopardy the second time for the same offense. To the same effect are many other judgments of high authority.

(*United States* v. *Shoemaker*, 2 McLean, 114; *United States* v. *Perez*, 9 Wheat. 517; *United States* v. *Haskell*, 4 Wash. C. C. R. 402; *People* v. *Olcott*, 2 John. Cas. 301; *Com.* v. *Purchase*, 2 Pick. 521; *Com.* v. *Roby*, 12 Pick. 496.)

In the case of *Com.* v. *Townsend*, 5 Allen, 216, the jury after having been out seven hours, were discharged in the absence of the Judge, as in this case, by the officer having them in charge, who acted by order of the Court; but the jury did not accept the discharge, but continued together and afterward found a verdict of guilty, sealed it up, and the next morning brought it into Court. The defendant moved to set it aside because it was made after the jury were discharged. The Court, in which the trial was, denied the motion, but on writ of error the Supreme Court of Massachusetts held that the verdict ought to have been set aside for the reason that before the jury agreed upon it they had been lawfully discharged from the consideration of the case. The Court in the case here cited say: " We do not doubt the authority of the Court in its discretion to make the order for the discharge of a jury after seven hours disagreement, yet a much preferable course would be to direct the officer, who had charge of them, that if they would not agree by a certain hour he should inquire of them whether they were likely to agree, and if told by them that they were not, then to discharge them." The authorities cited and the reasons on which they are founded, is a full answer to the defendant's objection and application for a discharge.

II. The seventy-third section of the Act concerning crimes and punishments (Laws 1850, p. 237) declares the forging or counterfeiting of a check for the payment of money by any person with intent to damage or defraud any person or persons, to constitute the crime of forgery. The same section also declares the uttering, publishing, passing, or attempting to pass as true and genuine a forged or counterfeit check by any person, knowing the same to be forged or counterfeited, with intent to prejudice, damage or defraud any person or persons, to constitute the crime of forgery also, and that the

offender, upon conviction of the crime, shall be punished by imprisonment in the State Prison for a term not less than one nor more than fourteen years.

· The defendant is accused by the indictment of having committed each of these distinct criminal acts, without showing that the check described in the first was the same as that described in the second count. But it would seem upon reading the second count of the indictment that the check which it is alleged that the defendant attempted to pass and did pass was a different check from the one described in the first count, for it is distinguished as the "last mentioned" check. It is not possible, from the face of the indictment, to say that the same check was intended to be described in both counts; and though the copies are alike *verbatim et literatim*, it is not to be presumed that each is a copy of only one and the same original instrument.

If it appeared from the indictment that the check described in the second count was the same as that described in the first, the objection that several offenses were charged in the indictment could not be maintained; for if the same person be guilty of making a forged or counterfeit check, and also of attempting to pass it, or of passing it (which involves the attempt), as true or genuine, with the intent to damage or defraud another, he might be indicted and tried for all these connected and consecutive acts as constituting one transaction, or he might be indicted and convicted for each distinct crime of which he might be proved to be guilty. The doctrine on this subject is laid down in Wharton's Criminal Law (141), as follows: " Where a statute makes two or more distinct acts, connected with the same transaction, indictable, each one of which may be considered as representing a stage in the same offense, it has in many cases been ruled, they may be coupled in one count. Thus setting up a gaming table, it has been said, may be an entire offense; keeping a gaming table and inducing others to bet upon it, may also constitute a distinct offense; for either, unconnected with the other, an indictment will lie. Yet, when both are perpetrated by the same per-

son, at the same time, they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted." (*Com.* v. *Eaton,* 15 Pick. 273 ; *Com.* v. *Tuck,* 20 Pick. 360 ; *Com.* v. *Hope,* 22 Pick. 1 ; *State* v. *Johnson,* 3 Hill's S. Car. R. 1 ; *Buck* v. *State,* 2 Harr. & John. 426 ; *State* v. *Coleman,* 5 Porter, 40 ; *Hinckley* v. *Com.* 4 Dana. 518.)

The two hundred and forty-first section of our Criminal Practice Act provides that an indictment shall charge but one offense, but it may set forth that offense in different forms under different counts.

According to the common law the defendant could not properly be charged in the same count with two or more distinct offenses. (Wharton's Cr. Law, 139 ; *Com.* v. *Eaton,* 15 Pick. 274.) Such a defect would be fatal on motion to quash or on demurrer, but it is said the better opinion is that it would not be ground for arresting the judgment. (Wharton's Cr. Law, 141 and 683 ; *Commonwealth* v. *Tuck,* 20 Pick. 360–362.)

By the two hundred and eighty-ninth section of our criminal code of procedure it is provided that the defendant may demur to the indictment on various grounds appearing on the face of it, among which is "that more than one offense has been charged in the indictment." The two hundred and ninety-seventh section provides : " When the objections mentioned in section two hundred and eighty-nine appear upon the face of the indictment they can only be taken advantage of by demurrer, except that the objection to the jurisdiction of the Court over the subject of the indictment, or that the facts stated do not constitute a public offense, may be taken at the trial under the plea of not guilty, and in arrest of judgment." If this section is to have full force and effect, then the objection that the indictment charged the defendant with having committed several distinct offenses cannot be supported. He failed to demur, and the statute says this objection so appearing on the face of the indictment can only be taken advantage of by demurrer.

But after verdict of guilty, the defendant may move in arrest of judgment, and the four hundred and forty-second sec-

tion of the same Act provides in terms that such motion "may be founded on any of the defects in the indictment mentioned in section two hundred and eighty-nine." If to the language here employed the fullest effect be given, it necessarily works a complete abrogation of section two hundred and ninety-seven—a consequence which should be avoided, if consistent with legal rules of construction and interpretation. It is a familiar doctrine that an Act of the Legislature should be so construed and expounded as to give some effect, if possible, to every portion of it; and it is the duty of Courts, as far as practicable, so to reconcile the different provisions as to make the whole Act consistent and harmonious. (*Com.* v. *Duane*, 1 Binney, 601; *Com.* v. *Alger*, 7 Cush. 53 and 89; *Attorney-General* v. *Road Company*, 2 Mich. 138.) Every interpretation that leads to an absurdity ought to be rejected; or, in other words, a construction should not be put upon a statute from which an absurd consequence would follow. (Vattel B. 2, Ch. 17, Sec. 282; Smith's Com. Sec. 486.) It is not to be presumed that the Legislature intended that the two hundred and ninety-seventh section before quoted should prove of no effect, or practically a nullity. We repeat that where a particular interpretation would be attended with such a consequence, it should be rejected, and that construction adopted which, in consonance with the true office of interpretation, will avoid the entire sacrifice of one portion of the statute for the purpose of giving the broadest effect to another. (Smith's Com. Sections 487, 488.)

If the four hundred and forty-second section which provides that a motion in arrest of judgment may be founded on any of the defects of the indictment mentioned in section two hundred and eighty-nine, be read without any reference to section two hundred and ninety-seven, its language, it may be conceded, is comprehensive enough to embrace the objection made. But we are not at liberty to disregard the two hundred and ninety-seventh section of the Act, inasmuch as the four hundred and forty-second section may be interpreted as refer-

ring only to the causes for arresting the judgment, which stand unaffected by section two hundred and ninety-seven.

The defendant having omitted to demur to the indictment for the defect objected to, it cannot properly be considered on motion in arrest of judgment.

The defendant also complains that the Court erred in refusing to compel the public prosecutor to elect upon which count of the indictment he would try the accused. If the Court has the right to require the election to be made, the exercise of the authority is a matter of discretion, (2 Russ. on. Crimes, 774; *People* v. *Baker*, 3 Hill, 159,) and where it does not appear that the defendant sustained any injury by the ruling of the Court in this respect, it cannot be held erroneous. But under our statute it may be doubted whether the Court has the right to compel the prosecution to elect in such cases, because the statute is positive that the objection suggested can only be taken advantage of by demurrer.

III. The point is made that the verdict of the jury is general, convicting the defendant of several distinct offenses, while the evidence is confined to only one of the offenses charged.

In *Crowley* v. *Commonwealth* and *Kite* v. *Commonwealth*, 11 Metcalf, 575 and 581, Mr. Chief Justice Shaw holds that where an indictment charges in one count a breaking and entering a building with intent to steal, and in another count a stealing in the same building, on the same day, and the defendant is found guilty generally, the sentence; whether that which is proper for burglary only, or for burglary and larceny also, cannot be reversed on error, because the record does not show whether one offense only, or two, were proved on the trial; and as this must be known by the Judge who tried the case, the sentence will be presumed to have been according to the law that was applicable to the facts proved.

If the defendant was proved to be guilty of both offenses charged, he cannot justly complain of the judgment. If he was proved to be guilty of only one of them, it must be presumed the Judge who tried the case pronounced judgment

against him as upon a verdict for the offense to which the evidence was directed and was properly applicable.

Judgment affirmed.